UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

BENJAMIN F. GRAHAM, II,

    Petitioner,

v.                                            Case No. 4:20cv211-WS-HTC

MARK INCH SECRETARY FLORIDA
  DEPARTMENT OF CORRECTIONS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, Benjamin F. Graham, II, through counsel, filed a petition under 28 U.S.C. § 2254 challenging his conviction in 2013-CF-214 in the circuit court of Wakulla County, Florida, for five counts of child neglect and several counts of drug possession and manufacturing, relating to cannabis sales and a methamphetamine cook and sell operation at the home he shared with the children. ECF Doc. 1. Petitioner raises two grounds of relief, both premised on ineffective assistance of counsel. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the petition, the record, the State's response (ECF Doc. 10), and Petitioner's reply (ECF Doc. 12), the undersigned recommends the petition be DENIED without an evidentiary hearing.

I. BACKGROUND

A. Offense and Conviction

Around July of 2013, several sources informed the Wakulla County Sheriff's Office ("WCSO") that Petitioner was selling marijuana and manufacturing and selling methamphetamine ("meth") in his home. ECF Doc. 10-11 at 148. WCSO's Investigator, Sergeant Eddie Wester, testified that state records confirmed Petitioner and his girlfriend had been purchasing excessive amounts of pseudoephedrine – a required precursor to making meth – at various stores in the area. *Id.* at 149-50. Based on this information, Sergeant Wester and his team began working with an undercover informant, Jonathon Gibson, to conduct controlled buys from Petitioner. *Id.* at 153-54.

Gibson testified about three controlled buys from Petitioner occurring on July 22, July 23 and July 29, 2013. ECF Doc. 10-3 at 25 & ECF Doc. 10-11 at 156-63. On each occasion, the transaction occurred in the master bedroom of the home. Gibson testified he knew the smell of a methamphetamine cook and "[i]mmediately when you would walk into [Petitioner's] house you could smell it. . . . Every time you could smell it. That's one thing about methamphetamines, the smell, you cannot hide." *Id.* at ECF Doc. 26-27. During the first buy, Petitioner asked Gibson to obtain some pseudoephedrine (Sudafed) for him, and Gibson relayed that information to the Sheriff's Office. *Id.* at 27-28. Thus, on the next two occasions,

"the Sheriff's Office had [Gibson] bring [Petitioner] a box of pseudoephedrine so that he could cook methamphetamines." *Id.* at 27-28 & 31.

Gibson testified that during each controlled buy, "there's always been children around." ECF Doc. 10-3 at 24-25. Additionally, the children could be heard in the background as Gibson was coming to the door for the third buy. *Id.* at 29, 42. Sergeant Wester testified investigators were aware of children being present in the home and, when asked why the investigation was proceeding so rapidly, replied, "Simply because we had determined that it was very likely that methamphetamine was being produced in the house. I also had knowledge of at least, at least two small children in the house." ECF Doc. 10-11 at 163-64.

The morning after the third controlled buy, law enforcement executed a search warrant on the Petitioner's residence. ECF Doc. 10-11 at 165-66. During the search, officers immediately noticed the smell which Sergeant Wester recognized as that of a meth cook. *Id.* at 166-67. Because an active meth cook was going on, officers evacuated the house and implemented safety protocols. *Id.* at 169. Meth, meth pipes, and materials typically associated with meth cook operations were found throughout the home, as well as three bags of marijuana, cash, a digital scale, and surveillance cameras. *Id.* at 172-87. Police also found five children, aged five to fourteen, in the home. *Id.* at 190-91.

The State charged Petitioner with nine counts: possession of methamphetamine with intent to sell or deliver; manufacture of methamphetamine; possession of cannabis with intent to sell or deliver; possession of drug paraphernalia; and five counts of child neglect not causing great bodily harm in violation of section 827.03, Florida Statutes. ECF Doc. 10-11 at 230.

Prior to trial, Petitioner moved to dismiss the child neglect charges because the State had not charged an intentional infliction of physical or mental injury upon a child. *Id.* at 193. That motion was denied in open court after a hearing. *Id.* at 228.

After a jury trial,[1] Petitioner was convicted of all counts. *Id.* at 122. He was Sentenced on August 26, 2015, to 5 years on each of the child neglect counts; 10 years plus 5 years' probation on count VI; 5 years on count VII; 365 days on Count VIII; and 10 years plus 5 years' drug offender probation on Count IX. The court ordered Counts I-VIII to run concurrently with each other and that Count IX run consecutively to Count VI. ECF Doc. 10-2 at 135.

B.   **Post-conviction History and Timeliness**

Under the Antiterrorism Effective Death Penalty Act ("AEDPA"), a petition for habeas relief under § 2254 must be filed within one (1) year of certain trigger

---

[1] Petitioner's first trial ended in a mistrial because a paneled juror was a guard at the jail where Petitioner was being detained pretrial. ECF Doc. 10-3 at 139. He was convicted after his second trial, commencing on July 6, 2015. ECF Doc. 10-4 at 162.

dates. 28 U.S.C. § 2244(d)(1). For purposes of this petition, the applicable trigger date is the time of final judgment.

Petitioner filed a direct appeal of his judgment and conviction to the First District Court of Appeals ("First DCA"). *See* First DCA Case No. 1D15-3670. The First DCA affirmed, *per curiam* and without a written opinion, on March 15, 2017. ECF Doc. 10-2 at 256. The First DCA denied Petitioner's motion for rehearing on April 13, 2017. ECF Doc. 10-2 at 266. Therefore, his conviction became final ninety (90) days later, or on July 12, 2017. *Lowe v. Fla. Dep't of Corr.*, 679 F. App'x 756, 757–58 (11th Cir. 2017) ("Under the Supreme Court's rules, the 90-day period for filing a petition for certiorari begins to run from the date of entry of the judgment; and in the event a timely petition for rehearing is filed and denied, the period begins to run from the date of the denial. Sup. Ct. R. 13.3.").

On February 8, 2018 (after 211 days), Petitioner filed a motion for postconviction relief. ECF Doc. 10-3 at 7. That motion was continuously pending through an order denying it, *id.* at 137, an appeal (1D18-2187), and the issuance of the First DCA's mandate affirming the denial without written opinion on June 19, 2019. *Id.* at 287. Petitioner filed the instant federal petition through counsel 149 days later, on November 15, 2019. ECF Doc. 1. Therefore, the Petition is timely filed, and Respondent concedes same.

## II.  LEGAL STANDARDS

### A.  AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief.  28 U.S.C. § 2254.  Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This standard is both mandatory and difficult to meet.  *White v. Woodall*, 572 U.S. 415, 419 (2014).  "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision.  *Id.*; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Also, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. Therefore, the denial of the claim by the state court is entitled to the deference. *Id.*

Finally, when a federal court reviews a claim under 28 U.S.C. § 2254(d), any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v.*

*Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

### B. Ineffective Assistance of Trial Counsel Claims

As stated above, Petitioner raises two (2) grounds based on ineffective assistance of trial counsel ("IATC"). An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The Petitioner bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The Petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* at 694. Bare allegations the Petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III. DISCUSSION

Petitioner exhausted the claims asserted in the petition by raising them as Grounds Two and Three in his state court motion for postconviction relief. ECF Doc. 10-11 at 27 & 30. The First DCA affirmed the circuit court's denial of that motion per curiam and without a written opinion. *Graham v. State*, 273 So. 3d 953 (Fla. Dist. Ct. App. 2019). Because the First DCA did not issue a written opinion, this court "look[ed] through" the unexplained decision of the First DCA to the circuit court's Order Denying Motion for Postconviction Relief on June 5, 2018, ECF Doc. 10-11 at 141, presumed the unexplained decision adopted the same reasoning and applied the deference due under § 2254(d). *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In doing so, the undersigned finds Petitioner is not entitled to habeas relief on either claim.

### A. Ground One: IATC for Failing to Move for Dismissal Based on Outrageous Police Misconduct

Defendant alleges trial counsel was ineffective for failing to move the court to dismiss the charges based on grounds that law enforcement violated his due process rights through their outrageous conduct when they gave the confidential informant pseudoephedrine to trade for marijuana in the third controlled buy. ECF

Doc. 1 at 16. The circuit applied *Strickland* and denied this claim on the merits, finding that any motion to dismiss would have been rejected because law enforcement's conduct in Petitioner's case was far different from the conduct at issue in *State v. Williams,* 623 So. 2d 462 (Fla. 1993), a case relied upon by Petitioner. ECF Doc. 10-11 at 142.

In *Williams*, the Florida Supreme Court held that the manufacture of crack cocaine by law enforcement as part of a reverse sting operation was so outrageous that it violated the defendant's due process rights under the Florida Constitution. *Id.* at 466. Unlike *Williams,* in Petitioner's case, law enforcement did not directly manufacture any controlled substances; they merely gave the confidential informant Sudafed to use as payment for marijuana purchased from the Defendant.

As the circuit court explained, *Williams* recognized "the difficulties faced by law enforcement officials in identifying and stopping drug trafficking", and the need for "[u]ndercover tactics and limited participation in drug rings" as often the "only methods law enforcement officials have to gather evidence of drug-related offenses." 623 So. 2d at 465. Indeed, the *Williams* court stated that "Law enforcement tactics such as reverse-sting operations can hardly be said to violate fundamental fairness or be shocking to the universal sense of justice." *Id.* (citing *State v. Burch,* 545 So.2d 279 (Fla. 4th DCA 1989) (holding that reverse sting operations involving undercover police officers selling controlled substances within

1000 feet of a school is not outrageous conduct as a matter of law), *approved,* 558 So.2d 1 (Fla.1990); *see also State v. Brider,* 386 So.2d 818 (Fla. 2d DCA) (holding that furnishing of a controlled substance by government agents in a reverse-sting operation did not constitute outrageous conduct to invoke due process considerations), *review denied,* 392 So.2d 1372 (Fla.1980).

Applying these principles, the circuit court denied relief to Petitioner because "supplying a substance known or reasonably known to be used in manufacturing methamphetamine is more-so characteristic of a tactic used to obtain evidence of drug crimes. It is not the same, nor does it go so far as to offend due process, as manufacturing narcotics like law enforcement did in *Williams*." ECF Doc. 10-11 at 142. The circuit court's determination was neither contrary to law nor a misapplication of the facts.

As an initial matter, and as relevant to both grounds for relief, Petitioner faces a steep climb in convincing a federal habeas court the state courts erred in their interpretation of state law. The Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law[.]" *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). "[S]tate law is what the state courts say it is." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017). Accordingly, "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

The circuit was correct in concluding *Williams* does not support Petitioner's argument. As the *Williams* court explained, the court's holding in that case was based on very specific facts. First, in *Williams* law enforcement was engaged in an unlawful activity – the manufacturing of crack cocaine. *See Williams,* 623 So.2d at 466. *Williams* was not a case where law enforcement simply delivered a controlled substance, something which the court determined could be done in a reverse sting operation. *Id.* Second, the *Williams* court found "disturbing" the fact that what law enforcement manufactured was "highly addictive and has caused death." *Id.* Third, the *Williams* court was "alarmed" that a significant portion of the crack cocaine manufactured by law enforcement was missing. *Id.* at 467. None of those facts exist here, and, surely, if delivering a controlled substance is not outrageous than providing Sudafed, a lawful substance, cannot be either.

In the instant petition, instead of relying solely on *Williams*, Petitioner relies on the United States Supreme Court's decision in *United States v. Russell*, 411 U.S. 423, 432 (1973), and argues the Court "left open the possibility that the Court would be presented with 'a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." ECF Doc. 12 at 4.

In *United States v. Russell*, the confidential informant "made an offer to supply the defendants with the chemical phenyl-2-propanone, an essential ingredient

in the manufacture of methamphetamine, in return for one-half of the drug produced." 411 U.S. 423, 425 (1973). Like Petitioner, Russell argued the informant's conduct was outrageous and thus barred his prosecution. The Supreme Court rejected that claim, holding "contribution of propanone to the criminal enterprise already in process was scarcely objectionable. The chemical is by itself a harmless substance and its possession is legal. While the Government may have been seeking to make it more difficult for drug rings, such as that of which respondent was a member, to obtain the chemical, the evidence described above shows that it nonetheless was obtainable. The law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *Id.* at 432.

Although the *Russell* Court did not apply the defense, Petitioner argues this Court should do so here, as "an issue of first impression,"[2] because there were children present in Petitioner's home when law enforcement, through a confidential

---

[2] "Outrageous conduct is only a potential defense in this circuit because neither the Supreme Court nor this Court has ever found it to actually apply and barred the prosecution of any case based on it." *United States v. Castaneda*, 997 F.3d 1318, 1324 (11th Cir. 2021) (citing *Cannon*, 987 F.3d at 941–42 (noting that "this defense has never succeeded here or in the Supreme Court" and that some of our cases "state that because this Court has never actually reversed a conviction based on outrageous government conduct, any discussion of it is merely dicta"). As the *Castaneda* commented, "Like the fabled creature Sasquatch, this defense has entered the common consciousness and is mentioned from time to time. Some claim to have caught fleeting glimpses of it in the remote backwoods of the law, but its actual existence has never been confirmed." 997 F.3d at 1324.

Case No. 4:20cv211-WS-HTC

informant, supplied Petitioner with an ingredient they knew would be used by Petitioner to manufacture meth in the home. The Court disagrees; the presence of the children in the home does not make law enforcement's conduct so shocking that it bars Petitioner's conviction. *See United States v. Cannon*, 987 F.3d 924, 941 (11th Cir. 2021). As in *Russell*, Petitioner was already in possession of some Sudafed or could have gotten someone else to purchase it form him. Thus, he could have made the meth with or without the informant's help. *Compare Russell*, 411 U.S. at 431 *with* 10-3 at 32 (testimony by informant agreeing that "Benjamin Graham said that he had one box" before informant gave him an additional box on July 29) and 10-11 at 148-49 (testimony by Investigator Wester that Petitioner and his girlfriend had been purchasing excessive amounts of pseudoephedrine). Moreover, according to the confidential informant, every time he went to the house for a controlled buy, he could tell meth was being cooked and children were present.

The circuit court, therefore, did not err in denying relief on this claim. Namely, "an attorney cannot be deemed ineffective for failing to raise claims that are "reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation omitted); *Knowles v. Mirzayance*, 556 U.S. 111, 126-27 (2009) (the law does not require counsel to raise every available non-frivolous defense); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection).

### B.   Ground Two: IATC for failing to object to admission of testimony concerning the three controlled buys

In Ground Two, Petitioner claims counsel was ineffective for failing to object to testimony by the confidential informant about the three controlled buys. The circuit court applied *Strickland* and denied this claim on the merits, finding that any objection would have been overruled as meritless. ECF Doc. 10-11 at 142. Specifically, the circuit court determined evidence of the controlled buys was relevant to the State's child neglect case. *Id.* at 143.

Petitioner argues the circuit court made an unreasonable determination of the facts because evidence of the controlled buys was not relevant to prove the child neglect charge. According to Petitioner, "the evidence found in the search would have been sufficient." ECF Doc. 12 at 9. Petitioner relies on the *Williams* Rule, codified at § 90.404, *Fla. Stat.*, to support his position.[3] Section 90.404(2)(a), Florida Statutes (1991), known as the character evidence rule, provides, in relevant part, as follows:

> Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

---

[3] This rule of evidence is often called the "*Williams* rule," because the statutory language tracks the language in *Williams v. State*, 110 So.2d 654, 662 (Fla.), *cert. denied*, 361 U.S. 847 (1959).

Petitioner's reliance on *Williams* is misplaced.  Under the *Williams* Rule, similar fact evidence is evidence that is *unrelated* to the charged offenses.  Instead, the evidence is admissible at issue, such as motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  *See Parker v. State*, 20 So. 3d 966, 969 (Fla. 3d DCA 2009).[4]  Here, the circuit court found evidence of the controlled buys was directly relevant to proving child neglect.  ECF Doc. 10-11 at 143.  The court noted, for example, that the Fifth Amended Information clearly alleged Petitioner exposed a child to drug transactions.  Thus, the fact that the controlled buys occurred at the home "served as part of the basis for the child neglect charges" filed against Petitioner.  *Id.* at 142.  In other words, the child neglect charges were not based solely on Petitioner manufacturing meth at the home.  *See* Fifth Am. Information, ECF Doc. 10-11 at 230-31 (alleging that "between July 1, 2013 and July 30, 2013" Petitioner committed child neglect "by exposure to cannabis, methamphetamine, drug transactions, and hazardous by-products and chemical vapors.").  The *Williams* Rule, therefore, did not apply.

Indeed, "evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged," is admissible under § 94.402 because 'it is a relevant and inseparable part of the act

---

[4] Petitioner relies on *Parker*, but as discussed above, the court in *Parker* made clear the *Williams* Rule applied to evidence that was unrelated to the offense.

which is in issue.... [I]t is necessary to admit the evidence to adequately describe the deed.'" *Griffin v. State*, 639 So. 2d 966 (Fla. 1994) (quoting Charles W. Ehrhardt, Florida Evidence § 404.17 (1993 ed.) and citing *Gorham v. State*, 454 So.2d 556, 558 (Fla.1984), *cert. denied*, 469 U.S. 1181 (1985)). "Evidence is 'inextricably intertwined' if it is necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose; or (4) adequately describe the events leading up to the charged crime(s)." *Ward v. State,* 59 So.3d 1220, 1222 (Fla. 4th DCA 2011) (citing *Dorsett v. State,* 944 So.2d 1207, 1213 (Fla. 3d DCA 2006)).

Petitioner argues, however, that even if evidence of the controlled buys "could be considered relevant to prove child neglect," the court must still consider whether, under § 90.403, "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." ECF Doc. 12 at 9. Without explanation, Petitioner argues evidence of the controlled buys was prejudicial. The undersigned disagrees.

As stated above, Petitioner was being charged with child neglect, for among others, selling drugs in the presence of his children. Thus, evidence of the controlled buys was necessary for the State to prove part of its case. It was also necessary to explain the context for Petitioner's arrest on child neglect charges for manufacturing meth. *See Bradley v. State*, 787 So.2d 732, 742 (Fla. 2001) (finding prior bad act

admissible because it "provides the necessary coherence to the State's theory"). The evidence was therefore admissible and any objection would have been denied.

Accordingly, counsel was not deficient for failing to raise an objection that would have been meritless. *See Chandler*, 240 F.3d at 917. Petitioner is not entitled to habeas relief on this ground.

## IV. CONCLUSION

### A. Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

### B. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.     That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Graham*, 2013-CF-214, in the Second Judicial Circuit, in and for Wakulla County, Florida, ECF Doc. 1, be DENIED without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

Case No. 4:20cv211-WS-HTC

    3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 14th day of June, 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.